Good morning, Your Honors. May I please the Court? Artem Sarin for the petitioner, Mr. Robert Baghdasaryan. I would like to reserve two minutes of my time for the rebuttal, if I may. Certainly. Please try to keep track of your own time. Absolutely. Originally, this was the case of Mr. Baghdasaryan, his wife and two kids. At one point in this litigation, the government graciously agreed to provide deferred action for the wife and the kids, so they're back at the agency's level and enjoying the deferred action. So now it's only the case of Mr. Robert Baghdasaryan. Now, when Mr. Baghdasaryan testified in court, an immigration judge denied his asylum claim for two reasons. The first reason was that he did not file within one year, as the law requires, and he did not fail under any exceptions to the rules. The second reason, the judge found his testimony to be not credible. I'm going to start with the credibility, and then I'm going to circle back to the one-year rule. So judge identified eight reasons for the negative credibility findings. However, when the case was appealed to the Board of Immigration Appeals, at that point, the board cited not all the reasons, so the board did not pay attention to all the reasons, because most of the reasons were based on speculation. Are we now down to five reasons? Right. Right. And even those, agency actually admitted that Mr. Baghdasaryan was not given an opportunity to explain. However, they characterized it that that wasn't an inconsistency, but was rather omission and embellishment. But it cannot be not inconsistency, because if it's inconsistency, he has to be given an opportunity to explain. Compared to his affidavit, which is lengthy. Why don't we take them up one by one? Okay. Which one? First one, for example. Membership, the date of the membership. Well, there are five reasons they gave, as I understand it. You're saying there were five reasons. Yes, for example. For doubting his credibility. That's correct. And I think you challenge each one of them. That is correct. So let's just get into the five and see what the answer is. For example, they stated he testified inconsistency as to the date he joined the party. Well, he testified consistently that he joined the party in 99. He did testify that the party was established in 98. However, at one point when he was asked what year you joined, they said 98. Okay. So one discrepancy is that at one point he said 98. At one point, yes. At one point he said 99. And he wasn't given an opportunity to explain. He wasn't asked whether, hey, you said 98 and you said 99 consistently. Why are you saying at the beginning 98? He wasn't given that opportunity. It was simply if, and that's my speculative opinion, if he was to be asked, he would have said, you know, I just made a mistake. For example, if we look at the judge's decision on page 074 of the administrative record, the judge says that Mr. Bagdasarian has not filed for asylum until October 17, 2001. But in reality, it was October 2003. Just a number. You know, I'm guessing it was a typo in the judge's decision. It could happen to anybody. But he consistently stated this was 99. He just, before that, he was, the testimony was. We have five discrepancies. You've got about four minutes left. Okay. The other one is they allege that there was inconsistency as to whether after the government attack on his shop and on his house, whether he actually filed the complaint or he went and tried to file the complaint. His testimony, his testimony said he went to the police to file a complaint. They said no, go to prosecutor's office. He went to the prosecutor's office. He was sitting and waiting. And then national security showed up and took him into their custody. Well, the affidavit said I went and filed a complaint and I was waiting to see the judge. Well, again, Mr. Bagdasarian was never asked, sir, did you actually file the complaint, or you wrote a complaint you were about to file and you were picked up? Nobody ever asked that simple question. Does the petitioner have the responsibility to give consistent testimony, Mr. Sarian? Absolutely, if his attorney asks consistent questions or the government attorney asking the questions, you know, asking questions in a consistent manner. This looked to be a gotcha game. The judge sits down and just writes all the inconsistencies down. Mr. Bagdasarian is in control of the presentation of his own evidence. He's certainly capable of telling a consistent story. Truth tends to be consistent, doesn't it? Absolutely. However, he's not in control of his testimony. He's asked the questions so he only can answer the questions. He's not allowed to tell his story. But he's not required to tell inconsistent stories. That's my point. That is true. But the way they ask the questions, for example, one of the questions was how many rallies you organized in two years. He said, well, I organized 30 rallies. With respect to the two issues that Judge Reinhart asked you about, was there trickery in the questions? Yes. There were some leading questions that he said after answering several times that he couldn't remember the number of rallies. For example, he said within the last two years I organized 30 rallies, but I did not organize any rallies in 2001. Well, four times he was asked, so how many rallies you organized in the last year?  We construed that as the judge trying to sort out the inconsistencies. If he keeps asking that question, maybe he's trying just to sort out that consistency. It wasn't asked by the judge. It was asked by a government attorney. The judge never asked any of it. The judge just sat and waited, and then at the end, in his opinion, he said, well, he was inconsistent. But the government attorney pushed and pushed and pushed, and he kept saying, I don't remember the exact number. It was 30 in two years. And then at the end, the government attorney simply said, well, then it would be 15 in the last year, and he goes, okay, yes. But that wasn't his testimony. Just after the fourth attempt, and his attorney sitting and not objecting to the question that was already asked and answered, when he said, I cannot remember the exact number of rallies I organized in the last year. I can tell you about 30 rallies in the last two. You know, they just, you know, divided to 35. And that's the IJ's ground for finding that his testimony was embellished regarding the number of arrests, because he wasn't given an opportunity to explain that. Absolutely. And also, there is one important thing. If we look at his affidavit, which is four page, there's four pages of his affidavit. Probably 85% of it is discussion of political climate in Armenia and intricacy of political struggle. He, the affidavit, did not concentrate on what happened to him other than five or six lines. So whoever was preparing the affidavit went into great lengths of explaining. How many pages was the testimony? Well, I can tell you exactly. Was it a couple of hundred pages? Not really, because there were several. So it's hundreds. The hearing. I mean, how many? The hearing. 124 is the last testimony, and it starts on 48. So about 60. It's very short. All right. So that when he did an affidavit of a few pages, he didn't say as much as he did in 60 pages of testimony. That is correct. So when he embellished it, he gave more facts, more answers, more questions than he did in his affidavit. Absolutely. And he was never asked to explain. Is that very surprising? Well, the affidavit. The answer is no to that question. Right. No, it's not very surprising. Right. Okay. All right. You've got a little over two minutes. Thank you very much. Now, this is a pre-IDA case, right? That's correct, Your Honors. May it please the Court, Tim Ramitz on behalf of the United States Attorney General Jefferson B. Sessions III. In this immigration case, the Commissioner challenges three things. First, the adverse credibility termination. Second, the termination that he did not establish an exception to the one-year filing requirement on asylum. And three, the denial of his application for cap protection. Starting with his denial of asylum, the agency reasonably found that he did not establish an exception to the one-year filing requirement. Can you address the credibility of these five or six grounds for the adverse credibility finding? Is there one that, in the government's view, is better supported than the others? Of course. And if so, if you can focus on that. I think the best and the strongest reasons supporting adverse credibility termination start, first, with the number of rallies Petitioner supposedly participated in and organized. So, for example. Go ahead. Go ahead. I have a question about that, because I just don't understand why the number of rallies that he's organized adjoined has any bearing on his claim for relief. As we know, this is a pre-real ID case, so it has to go to the heart of his claim. And the heart of his claim is that he was politically persecuted in Armenia because of his support for an anti-opposition group to the government of Robert Kacharan. And so he is stating that because he was a leader in this party and he organized these rallies, he came to the attention of the authorities and they persecuted him. So it's important and critical to his claim when he organized these rallies, how many he organized, because that's what he's saying causes persecution. So when you look at the calligraphy between him and DHS counsel. Where is the inconsistency? Because his explanation is that, I said there were about 30 rallies in a period of 2000 to 2001, but after April 2001, I did not participate in any rallies. But there were rallies taking place. He wasn't necessarily participating in them. That doesn't seem unreasonable as an explanation of why the numbers might have been different. It's not so much numbers. It's what he said he did. So in the initial exchange, before he gets to that testimony where he talks about not participating in rallies after the March 28, 2001 detention, he had a previous exchange with DHS where they asked him, well, how many rallies did you organize in 2000, 2001? He said many, many rallies. They wanted to narrow that down. Does that mean one in 2000, one in 2001? He said no, 10 to 15 in each year. He said, okay, in 2001, how many did you organize that year? He said 10 to 15. What months did you organize them in? He said from January 2001 until the end of summer, and then moreover, until September 2001 when I left for the United States. And then later in his testimony, he's pointed out to him,  because he stated after the March 28, 2001 detention, you no longer participate in rallies out of fear for your life. And he said, well, I never said that before. That was his explanation. Well, is there a difference between participating and organizing? He denies everything. What? He denied it all. He said I never participated in them after that. Right.  He said he had no more involvement with the rallies. Well, that's, you know, I think he also said that he wasn't a participant. But, you know. That was not his explanation, please. These problems of dates and, you know, numbers really don't go to the heart of the question. He did do the rallies. He did a number of rallies. You don't challenge that. The exact times and the exact numbers do not really go to the heart of his claim. I think when an immigration judge is faced with this kind of testimony, it's very reasonable for him to believe that. If an immigration judge wants to find some inconsistency in a couple of hundred pages of testimony, he probably can, which is why they have to be something that really goes to the heart of the claim, that he really wasn't organizing rallies. He really wasn't participating. And there doesn't seem to be much doubt about that. I think that's what his testimony shows, that he wasn't participating after this fact when he said he was. Because it was only after he was caught later on saying, I was so scared for my life after this detention that I stopped participating and stopped doing anything with rallies. Well, did he say he hadn't stopped doing anything? Where is that? I believe the exact exchange is, what about your testimony? So between, what about your testimony stating he participated in rallies from 2001 to 2000, it was January 2001 until September 2001. He said did not previously. What page are we on? This is around page 257. Around page? What page exactly? If you're reading from something. Administrative record. I'm reading from my notes, but administrative record page 257. He said I participated in these rallies during the first four months of 2001. After those four months, I did not participate in rallies. That's what I said. He said he didn't participate. He didn't say I didn't help organize them. Well, I mean, he explains inconsistency. Okay, but when I said that, he said no. He said I didn't do anything with them. Well, that seems to be. Well, that's not what he said. And if you're telling us what he said, you ought to tell us what he said, not embellish it. You know, because embellishment will get you terrible punishment. Well, speaking of embellishment, we should move on to the second inconsistency in this case, which was his number of arrests. He all of a sudden sprung in his testimony. He didn't spring it in testimony. In his affidavit, he didn't explain everything that happened to him. He explained the major things in a short paragraph. When he testified over 100 pages, he said a lot more about what happened to him. That's not springing it. Well, he never mentioned any arrests, and these are all arrests he said came on account of his political activities. Yes. He didn't mention them when. In his affidavit. I see. You don't understand that an affidavit is not the same as 100 pages of testimony? I understand that. But you don't say everything in your affidavit? And we've said that in our decisions repeatedly? Your Honor, I understand the difference. But this was an application submitted to USCIS in the first instance. And you are not required in your affidavit to list everything that happened to you. But he is trying to establish his claim in that affidavit. Yes. And the main claim was that he was beaten when he was arrested. On March 20, 2001. Yes. He was beaten. And then when he was questioned at the hearing, he said that he had been arrested more than one time. Yes. But when he told his main story in a paragraph in his affidavit, he didn't list everything that happened to him. Why is that springing something suddenly? I think when you're the fact finder, it's reasonable that you would have written down that you were arrested three times. I don't think you've read our cases in which we've said that we don't expect people to put everything in the affidavit and that we should not put much emphasis on the fact that the affidavit doesn't tell the entire story. We've said that repeatedly. There is that line of cases, but there also are cases where there are significant omissions that can also support an adverse credibility determination. And the government submits these are significant omissions. But that's one of your strongest points, then, that when he made his affidavit and he discussed the main episode that caused him to be frightened, he didn't include everything that happened to him. That's just one of your strongest points for finding this witness incredible. I think that is one of the strongest points. He admitted these three arrests where he claimed each time is because he was out there participating in these rallies. Well, it's all a question of context, too. If his affidavit said, you know, I was politically active and during my participation I was arrested a total of three times and then it turns out at the time of his testimony it's like, oh, instead of three times I was actually arrested for 10 times, I think you have a better argument. It's just the way that the affidavit was written in context. He was talking about an incident that happened that then led up to an arrest. So I think in that instance talking about how the activity led up to the detention and arrest in a separate room is different than saying that I was arrested only once and then as it turned out it was a total of three times. Right? Would you agree with that, that context really matters? I agree that goes to the standard of review and whether reasonable minds could differ over whether or not that should be included in an affidavit. Does context matter? Of course context matters. And it does matter to the fact finder. So the standard of review is whether or not the record compels a finding that he should have included these in his affidavit. Would your response be different had he been given an opportunity to explain away these perceived by you inconsistencies? He was given an opportunity to explain why it did not include the arrest. And that's actually on page 233. But was he given an opportunity to explain away all of the five inconsistencies that are now under consideration? If we go down each one of them, I believe we'd have to discuss each one individually. But I believe he was given an opportunity to explain. There was one I noticed. Not for every ground though. Not for every ground. There was a point cited by the immigration judge where he talks about his affidavit. He was forced to collaborate against his party. And he was never asked that in testimony. So that's an inconsistency that was not ever, he wasn't given an opportunity to explain why he never mentioned that in his testimony. But as far as this arrest ground goes, on page 233 he's asked, why did you not include this additional arrest in your affidavit? And he said, I simply didn't think it was important. And that's not an explanation that the immigration judge has. Your time is up. Thank you. I'll be very short. I'm going to start with page 233 that the government attorney just alluded to. Government argues that he explained why he did not include arrest. Actually, that's not what happened here. Government attorney at the time of the trial asked him what happened. He said, they slapped me. And then the government attorney said, didn't you think to include that in your affidavit? And he said, I didn't think it was important. So he did not think it was important to include that they slapped him. Not that he did not think it was important to include that he was arrested several times. So he was answering the level of harm, not number of arrests. Bottom line, the agency admits the fact that he was not given an opportunity to explain none of it. The judge never told him, hey, please explain this. And the agency admits that that's in the BIA decision. And had he had an opportunity to explain, of course, I cannot speculate what he would have said, but he would definitely have had an opportunity. He should have been given an opportunity. Thank you, Kev. Thank you very much. The case is arguably submitted.
judges: Reinhardt, Nguyen, Marbley